JAMES CLARK v. RUFUS W. LANDON ET AL.

*Mortgage—Absolute conveyance—Land contract—Accounting—Appeal.*

1. A mortgagor conveyed the mortgaged premises to the mortgagee, and as a part of the transaction entered into a contract in the usual form for the purchase of the land for a consideration equal to the mortgage indebtedness, which contract provided that the mortgagee should have possession until the purchase money was paid. The mortgagee had been in virtual possession of the most valuable portion of the land for four years, under an agreement authorizing him to collect the rents and apply them on the mortgage indebtedness, which agreement was not canceled. And it is held that the fact that possession was given to the mortgagee, in view of the previous dealings of the parties, did not militate against the theory that the deed and contract were in fact a mortgage, and that the authorities in Michigan in similar cases declare such a transaction to be a mortgage; citing *Swetland v. Swetland,* 3 Mich. 482; *Batty v. Snook,* 5 Id. 233; *Enos v. Sutherland,* 11 Id. 538; *Ferris v. Wilcox,* 51 Id. 105; *Jeffery v. Hursh,* 58 Id. 246.

2. Where certain items taken into account on an accounting are examined in detail by the briefs of the counsel for both parties, and it appears that the court below erred in respect to the same, this Court will be disposed to waive the objection that the exceptions are not specific, and enter into an examination of the accounts.[1]

Appeal from Berrien. (O'Hara, J.) Argued January 5, 1892. Decided February 5, 1892.

---

[1] See *Crawford v. Osmun, ante,* 77.

Bill to declare a deed and land contract a mortgage, and for an accounting. Defendants appeal. Decree modified and affirmed. The facts are stated in the opinion.

*Theo. G. Beaver* and *O. W. Coolidge*, for complainant.
*Edward Bacon*, for defendants.

Morse, C. J. James Clark, the complainant in this case, in January, 1871, was the owner of certain real property in the city of Niles. He had mortgaged this property to one Thomas G. Wickham and others for large amounts, which he was unable to pay. Some of the mortgages were in process of foreclosure, and he was liable to lose all the property. He finally made an arrangement with Wickham by which the latter was to assume and pay all this mortgage indebtedness, and give Clark a chance to redeem the premises. To this end Clark and his wife, on the 28th day of January, 1871, executed a warranty deed of the property to Thomas G. Wickham, and at the same time Clark and Wickham executed a land contract, by which Wickham agreed to sell the land to Clark. The amount of Clark's indebtedness at that time was figured to be $10,225, and this sum was used as the consideration for both the deed and the land contract. The agreement, after reciting that Wickham agrees to sell to Clark for the consideration of $10,225, and describing the premises, concludes as follows:

"And the said party of the second part agrees to purchase the above described premises, and to pay therefor the sum of ten thousand two hundred and twenty-five ($10,225) dollars in manner following, that is to say, in three equal annual installments from the date hereof, with interest, to be computed from the date of these presents, at and after the rate of seven per centum per annum on the whole sum that shall be from time to time unpaid, and to be paid annually, both principal and interest to

be paid in the city of Niles. And the said party of the first part, on receiving such payment at the time and in the manner above mentioned, shall, at his own proper cost and expense, execute and deliver to the said party of the second part, or to his assigns, a good and sufficient deed or deeds, and thereby convey to the said party of the second part, his heirs and assigns, a good and unincumbered title in fee-simple to the above-described premises, with their appurtenances.

"And it is mutually agreed between said parties if said party of the second part shall fail to perform this contract, or any part of the same, said party of the first part shall immediately after such failure have the right to declare the same void, and retain whatever may have been paid on such contract; and the time of payment is of the essence of this contract.

"And it is agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties.

" In witness whereof the said parties have hereunto set their hands and seals the day and year first above written.

" It is understood and agreed that the party of the first part is to have possession until the full amount of the purchase money is paid."

Wickham then took possession of the property, and received most of the rents and profits thereafter. Clark received the rents from the bowling alley on the premises up to the 22d of March, 1871, and for the use of the hall up to August 1, 1871. On or about the 28th day of January, 1872, Wickham sold a portion of the land to one John Aul for the expressed consideration of $3,500.

Wickham died in July, 1873, leaving a last will and testament, in which he appointed his wife, Harriett Wickham, and John Woodruff and Rufus W. Landon his executors. He devised his property in trust to said executors; one-third of the net income of his property to be paid his widow annually in lieu of her dower in his real estate and her distributive share in his personal property, the remaining two-thirds of the net income to be paid to

the guardian of his children, for their maintenance and education and support. The property was bequeathed in equal shares to his children, to be paid them as they respectively became of age, unless a majority of the executors saw fit to postpone such payment for a period not exceeding ten years. The executors were authorized, if a majority of them deemed best to do so, to sell and convey any part of the real estate, to the end that the proceeds of such sale or sales might be reinvested.

April 20, 1874, complainant filed the original bill in this case, making the executors and John Aul and his wife, Eva Aul, defendants. The children of Wickham were not made parties. This bill set out the various circumstances and transactions (not necessary to be mentioned here) which led up to the arrangement between Clark and Wickham, which was performed by the execution of the deed and land contract of January 28, 1871. The bill alleges that the deed and contract, taken together, were in law a mortgage; that the purchase price of the land sold to Aul should be applied as a payment upon said mortgage, and deducted, as of the date of said sale, from the sum of $10,225, mentioned as the consideration of said deed and contract, which payment complainant believes was $4,500; that before Wickham's death complainant made arrangements with one Reading to procure sufficient money to pay up the whole of the balance due on said contract to Wickham; that he went to Wickham, and so informed him, but that Wickham, although he had previously agreed to do so, refused to take the money, because it was not all due, saying to Clark, in substance, that he knew he had agreed to take the money at any time, whether it was due or not, and further saying, "You can't compel me to take it until it is all due."

The bill further alleges that complainant has lately

received offers for the purchase of a part of the property, and that he can sell the same for $12,000, if the cloud be removed from the title; that on the 8th day of April, 1874, complainant served upon the executors a request in writing that they render an account to him of the rents and profits of the several premises so deeded to Wickham, and in their possession, and with such request made an offer to pay what might be found to be due upon said land contract after deducting such rents and profits, and requested an answer, but received none.

The bill prays that the deed and contract may be declared a mortgage, and that an account may be taken of the rents and profits; that the amount due to Wickham's estate upon said contract, after deducting such rents and profits, may be ascertained and decreed; that a fair valuation be taken of the premises deeded to Aul, and, if Aul shall be found to be a purchaser in good faith, that the deed shall be affirmed to him, and if not that such deed be set aside or canceled at the election of complainant, and the defendants be decreed to account to him for a fair rental value of the premises, or the complainant be paid a reasonable price therefor, as he shall elect; and that the complainant be permitted to redeem the whole premises from Wickham's estate upon the payment to it of the amount that shall be found to be due; and also for general relief.

The defendants answered this bill, and an issue was made, and proofs taken, and a hearing had upon pleadings and proofs. The case was finally submitted in the court below in 1876, but, if any decision was arrived at by the circuit judge, no written decree was ever filed in the cause. In the year 1876 or 1877 Clark removed to Minnesota, where he now resides. Nothing further seems to have been done in the case until December 4, 1885, when a stipulation was filed consenting to the substitu-

tion of Theo. G. Beaver as solicitor for complainant in place of the original solicitors. March 23, 1886, by leave of the court, the complainant filed a supplemental bill, making Harriet Wickham, the widow, and Kate Nobles, Jessica A. Spaulding, and Lucy O. Wickham, children of Thomas G. Wickham, additional defendants. This supplemental bill made substantially the same case as the original bill, and called for the same relief.

The answer of the widow and children denied all right of complainant in said premises, except such as he might have had by the fulfillment of the land contract on his part; and alleged that since the death of Wickham the premises had been held adversely to complainant, and under claim that the warranty deed from him to Wickham was an absolute conveyance, not subject to any equity of redemption, and that for more than 15 years prior to the filing of such supplemental bill the premises had been held in possession adverse to said complainant, and claiming the benefit of the statute of limitations as against him; that Wickham only received a part of the purchase price of the land sold to John Aul, and setting forth other matters not necessary to be here considered; that the complainant abandoned his suit under the original bill, and moved to Minnesota, and left the defendants to take such action as they pleased, there being not even any notice of the pendency of said suit appearing in any form in the office of the register of deeds of Berrien county; that he has been guilty of such laches and delay that he ought not to be entitled to any decree to redeem as against the defendants, the widow and children of the deceased, Wickham.

Additional proofs were taken, which, with the proofs taken under the original bill, were presented to the circuit judge of the Berrien county circuit court in chancery, it being stipulated that he should make the accounting

instead of a circuit court commissioner. The circuit judge found the deed and contract to be a mortgage, and that the complainant was entitled to redeem. He further found upon the accounting, as made by him, that the complainant was indebted to the estate of Wickham upon the land contract in the sum of $1,084.58, and decreed that on the payment of such sum on or before the 15th day of March, 1891, the deed and contract should be delivered up and canceled, excepting as to the portion of the land sold and deeded to John Aul and his wife, Eva Aul; and that on such payment by or on behalf of the complainant the defendants yield and deliver up to him the possession of the premises, excepting the Aul land.

We think the court below was right in construing the deed and contract as a mortgage. The instruments were part of one and the same agreement, and must be taken together. The clear intent of the transaction was simply a change of security. Before their execution, Wickham, under another agreement, had been collecting the rents of one building, which agreement assigned over to Wickham such rents for four years, and until all indebtedness to him should be paid by complainant. By this agreement Wickham was made the agent of Clark, and was to receive $50 per year for his services as such agent; and this collection of rents was to continue until Wickham was fully paid all claims, debts, and demands "which he now holds or may hereafter have against me by reason of the notes, mortgage, services, or otherwise." This agreement does not appear to have been canceled, and was in the possession of Wickham's executors at the time they made answer to the original bill of complaint. The fact that possession was given to Wickham by the land contract until the purchase price or indebtedness therein mentioned was fully paid, under the circumstances

of the previous dealings of the parties, does not militate at all against the theory that the transaction of the giving of the deed and the land contract was such an one as to make them a mortgage. He had been in virtual possession of the most valuable part of the property, and collecting the rents, for four years, and was simply to continue in such possession. The authorities in this State in similar cases declare such a transaction as this to be a mortgage. *Swetland v. Swetland,* 3 Mich. 482; *Batty v. Snook,* 5 Id. 233; *Enos v. Sutherland,* 11 Id. 538; *Ferris v. Wilcox,* 51 Id. 105; *Jeffery v. Hursh,* 58 Id. 246.

A deed with a bond or agreement to reconvey the estate upon payment of a certain sum of money, or upon the performance of some other condition, has always been held to constitute a legal mortgage, if the instruments are of the same date, or are executed and delivered at the same time, and as one transaction. When the deed and defeasance are executed at the same time, it is a conclusion of law, in the absence of any proof showing an intent to the contrary, that they constitute a mortgage. Jones, Mortg. 244.

In *Batty v. Snook,* 5 Mich. 233, the contract, as in this case, undertook to make the time of performance as of the essence of the contract, and material. It was also expressly conditioned in that case that the contract should be the same as an original contract for the conveyance of land, and that, if complainant failed in any particular in complying with the contract, he should have no rights, either at law or in equity, in the premises. It was decreed, however, to be a mortgage, and the Court said:

"'Once a mortgage, always a mortgage,' may be regarded as a maxim of the court. Equity is jealous of all contracts between mortgagor and mortgagee by which

the equity of redemption is to be shortened or cut off. The mortgagor may release the equity of redemption to the mortgagee for a good and valuable consideration, when done voluntarily and there is no fraud, and no undue influence brought to bear upon him for that purpose by the creditor. But it cannot be done by a contemporaneous or subsequent executory contract, by which the equity of redemption is to be forfeited if the mortgage debt is not paid on the day stated in such contract, without an abandonment by the court of those equitable principles it has ever acted on in relieving against penalties and forfeitures."

It is argued that the court erred in the accounting in three particulars:

*First.* In allowing the complainant the sum of $3,500, the purchase price of the land sold to Aul. It is claimed that only $1,500 was ever collected on this sale, and that the executors of Wickham's estate were obliged to foreclose the mortgage for the balance, and bid in the premises in satisfaction of the same, and that the defendants ought not to be charged with the full purchase price, which they never received. We think that it was contemplated at the time the land was sold that this $3,500 should be applied upon the debt of complainant to Wickham, and that complainant is not responsible for the noncollection of the whole purchase price by Wickham or the defendants. This item was therefore properly allowed as a credit, as of the day of the sale, to complainant.

*Second.* That the aggregate of the amount allowed to complainant for the income of the estate is excessive in the amount of at least $700.

*Third.* That the amount allowed to defendants for expenses and salary in the care of the property and the collection of rents is too small by at least $900.

The complainant's counsel contended that these two items ought not to be considered by this Court, because the exceptions taken are not specific, and do not point

out or show wherein the computation or allowance of the court below in these respects is faulty or incorrect. It is true, the exceptions are too general, and ordinarily we should not consider them; but, as the items of the rent account have been examined in detail by the briefs of both counsel, and we are satisfied that the court belowed erred in this respect, we feel disposed to waive this objection, and enter into the accounts. We shall not go into the details of our examination, but we find the income of the property received by the defendants to be, interest included, $480.30 less than the sum found by the circuit judge. The defendants should also be allowed the sum of $827 in excess of the amount allowed by the court below for expenses and salary. This would make the amount due from the complainant January 1, 1891, $2,391.88, instead of $1,084.58.

The decree will be affirmed as thus modified. The defendants will be allowed the costs of this Court. The time of payment by complainant will be extended until 90 days after the settlement and filing of the modified decree, which may be settled and filed in this Court.

The other Justices concurred.