MAGINN *v.* CASHIN.

1. WITNESSES—MATTERS WITHIN KNOWLEDGE OF DECEASED—SUITS BY OR AGAINST HEIRS—STATUTES.

Section 10212, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12856; 3 Comp. Laws 1915, § 12553), relating to testimony as to transactions with deceased persons, protects not only personal representatives but their heirs, assigns, etc., and it is immaterial that the deceased's estate is not a party to, or interested in, the litigation.

2. APPEAL AND ERROR—REVIEW—EQUITY—EVIDENCE — DOCUMENT-
ARY EVIDENCE.

Where, in an equity case, the conclusions of the trial judge
are based upon incompetent testimony to an extent not
clearly disclosed, the Supreme Court will eliminate such
testimony, and, independently of any presumption which
might otherwise arise from the trial court's determination,
pass upon the significance of the documentary evidence
to which such testimony relates in the light of properly
proven surrounding facts and circumstances. .

3. MORTGAGES—DEEDS—CONSIDERATION—PRESUMPTIONS.

Where a brother and sister were tenants in common of
premises in which their mother had a life estate, and
the mother indorsed his note given to his sister for money
loaned and received from him a deed to his interest in
the premises for an expressed consideration of one dollar
and gave him back a contract of sale and defeasance of
the same property for a stated consideration correspond-
ing in amount with such note and later conveyed the
premises to the sister for a nominal consideration, *held*,
that the surrounding facts and circumstances strengthened
the legal presumption that the instruments referred to of
even date operated together as a mortgage.

4. SAME—LAND CONTRACTS—DEEDS—PRESUMPTIONS.

The contract of sale, containing the customary provisions
of an ordinary land contract, but not containing a con-
dition binding him to buy, and providing that the stipu-
lations therein should apply to and bind the heirs, as-
signs, etc., of the respective parties, was sufficient, in con-
nection with a deed of the same date to her of said prem-
ises for a consideration of one dollar, to show that such
deed was a mortgage.

5. SAME — DEEDS — CONSTRUCTION OF INSTRUMENT — SUBSEQUENT
GRANTEES.

Such deed and land contract continued to be a mortgage,
even in the hands of a grantee of the premises.

6. SAME—DEEDS—ASSIGNMENTS.

The deed to defendant from her mother of premises to
which the mother held title by a deed which was in fact
a mortgage given to secure the mother as indorser on
the grantor's note given to defendant for a loan, consti-
tuted an assignment of such security.

7. SAME—FORECLOSURE—FORFEITURE.

    The holder, as assignee of the mortgage, could not fore-
close same by merely declaring the contract forfeited.

Appeal from Genesee; Stevens, J. Submitted Janu-
ary 10, 1917. (Docket No. 92.) Decided May 31, 1917.

Bill by William J. Maginn against Frances A.
Cashin to have a deed declared a mortgage and plain-
tiff permitted to redeem. From a decree for plaintiff,
defendant appeals. Modified and affirmed.

*Farley & Selby,* for plaintiff.

*Black & Roberts,* for defendant.

STEERE, J. The bill of complaint filed in this case
asks that a certain deed to defendant of a described
store property in the village of Mt. Morris, Genesee
county, be declared a mortgage and plaintiff permitted
to redeem.

For some time prior to and on June 2, 1908, defend-
ant, Frances A. Cashin, and her brother, McArthur T.
Cashin, owned as tenants in common the property in
question which was left them by their father subject
to a life estate reserved to his wife and their mother,
Mary A. Cashin. On that date McArthur Cashin bor-
rowed from defendant $450, giving her his promissory
note therefor indorsed by their mother, to whom he on
the same date gave a warranty deed of his undivided
one-half interest in the property in question for the
stated consideration of $1. There was but one witness
to this deed, and it was not recorded. On the same
date the mother, Mary A. Cashin, gave back to Mc-
Arthur a land contract for the premises described in
his deed to her for a consideration of $450 to be paid
on or before June 1, 1909, with interest at 6 per cent.
per annum; he to pay all taxes assessed against said
property. Defendant testified that she would not have

lent her brother the $450 without security, and for that relied upon her mother's income from her life estate.

The mother, Mary A. Cashin, was then (June 2, 1908) about 53 years of age, and died on March 6, 1913. McArthur Cashin wholly defaulted in his indebtedness to his sister and mother, paying neither principal, interest, or taxes. On February 28, 1913, shortly before her death, Mary A. Cashin executed to defendant, for the expressed consideration of $1, a warranty deed to an undivided half interest in the property. Of this defendant, who owned one-half interest, testifies:

"I did not inquire how my mother got the other half interest at the time she gave me the deed, nor did I pay her any money for the deed, and made no inquiry about any incumbrance on the property."

The mother had control of and the income from this property under her life estate until the time of her death. The lot was occupied by a store building and the property, which rented for $200 per year, was assessed for $1,500. Plaintiff testified that it was "worth better than $2,000" on June 2, 1908, when McArthur gave his deed of a half interest to his mother.

After her mother's death defendant assumed charge of the property and collected the rent. To what extent she at first recognized her brother's interest in it, subject to his indebtedness to her, is in dispute, but it is shown that following their mother's death there were negotiations looking to an adjustment of the matter along the line of defendant paying her brother a proposed balance above the amount he owed her for a conveyance of his interest in this property, which progressed to a point where a deed to her from McArthur Cashin, who then lived in Chicago, was sent to a local attorney who represented him for delivery

upon closing the deal, but after obtaining an abstract
of the property, which she states she showed "to a
friend," she declined to make any settlement. Her
testimony and that of the attorney are widely at
variance as to what was said and done in that con-
nection. She also testified that the existence of the
contract from her mother to her brother was unknown
to her until after her mother's death, when plaintiff
told her of it. He testified that she knew all about it
and its purpose at the time he drew it, and that when
he drew the deed from her mother to her he called her
attention to McArthur's interest in the property, and
she replied, "I will take care of that."

It is admitted that some time subsequent to her
mother's death, and before plaintiff received his deed
from McArthur, she served notice upon the latter of
forfeiture of his land contract because of default in
payment. The notice is dated May 6, 1913, but the
date of service is not shown.

By deed dated May 31, 1915, McArthur Cashin sold
and conveyed all his interest in this property to plain-
tiff for an expressed consideration of $1. Plaintiff
testified that McArthur made him an offer and he took
him up, the consideration being $100 and "some work
I had done for them," a promissory note being given
for the $100.

Defendant was notified of the sale, and plaintiff
thereafter collected one-half of the rent from the ten-
ant until he had received $85, when further payments
to him were refused at her instance, followed by plain-
tiff filing this bill.

The trial court found that the deed from McArthur
Cashin to his mother was given to secure, or in-
demnify, her for indorsing his note to his sister and
was in legal effect a mortgage; that the deed from the
mother to defendant operated as an assignment of
such security to defendant from whom the $450 was

borrowed; that plaintiff by his deed from McArthur of his half interest in the property held title to the same subject to such incumbrance, and was entitled to redeem by paying the amount of the note with interest thereon together with one-half the insurance, taxes, cost of improvements paid by defendant and one-half of the $85 rent he had collected, less one-half the rent defendant had collected since her mother's death.

In behalf of defendant it is first complained that the court erroneously permitted plaintiff, against objection, to testify in his own behalf to matters which, if true, were equally within the knowledge of Mary A. Cashin, deceased, in violation of section 10212, 3 Comp. Laws (3 Comp. Laws 1915, § 12553). No written opinion was filed by the trial court, but it is indicated in the brief of plaintiff's counsel this testimony was admitted on the theory that the statute was inapplicable because the estate of deceased was not a party to or affected by the litigation, and neither defendant nor plaintiff's grantor was interested in the subject-matter as an heir.

Plaintiff was the conveyancer who drew the instruments in question and witnessed their execution, going to deceased's home for her signature and acknowledgment. He was permitted to give his version of the transaction, in which he testified to the understanding of the parties as to the conveyances and the intent of deceased in giving the instruments she executed. This, we think, was not permissible under the statute. Since the amendment of 1875 it is not essential to its application that the deceased's estate be a party to or interested in the litigation. The law protects not only "personal representatives," but "heirs, assigns," etc., of a deceased person, and is by prevailing construction applicable where they are in antagonism.

This controversy turns on the acts and dealings with the property by Mary A. Cashin in her lifetime. The

interest these parties are litigating is directly affected by what she did and why. Either might invoke the statute to shield his or her interest from the testimony of the other 'as to transactions with Mrs. Cashin which, if true, were equally within her knowledge. Whatever variations may be pointed out in any of the many cases where this statute is involved, either before or since the amendment of 1875, the proper rule of construction is clearly and unequivocally stated in *Ripley* v. *Seligman*, 88 Mich. 177 (50 N. W. 143). That case has been frequently cited with approval in subsequent decisions. In *Shepard* v. *Shepard*, 164 Mich. 183 (129 N. W. 202), where numerous decisions upon the statute are cited, Justice STONE quotes and emphasizes the language used by Justice CHAMPLIN in the *Ripley Case* as having increased significance in view of later amendments of the statute.

To what extent the trial judge based his conclusions upon the incompetent testimony of plaintiff is not clearly disclosed, and therefore it becomes the duty of this court to eliminate such testimony, and, independent of any presumption which might otherwise arise from the trial court's determination, pass upon the significance of the documentary evidence in the light of properly proven surrounding facts and circumstances.

It is shown that on June 2, 1908, the mother and her two children owned this store property together as the husband and father had left it to them, each of the children an undivided half of the fee, and the mother a life estate of the whole, giving her so long as she lived the same control, use, and enjoyment of the property as though she owned it absolutely. The purchase of a half or the whole of the fee would be of no benefit to her in that particular. Her son wanted to borrow $450 from her daughter, which the latter declined to loan him without security, and the mother

indorsed his note for that amount. While both sister and mother were apparently disposed to assist him, and did so when protected from loss, it is fairly indicated that the transaction was with them an accommodation because of kinship rather than a business venture for gain.

The mother indorsed her son's note and he gave her a deed of his half interest in the property for the expressed consideration of $1, receiving back from her a contract of sale and defeasance of the same property, for a stated consideration corresponding in amount with the note she had indorsed for him. She already had complete use and enjoyment of the property for life, and no reason appears why she should desire to purchase his interest. It is not proven that she directly paid him anything for the deed, nor presumed beyond the nominal consideration stated in the instrument. The gross inadequacy of price, or absence of price for the property, is a strong circumstance indicating that security, and not actual sale, was what the parties intended by this deed. The transaction did in fact operate as security for her indorsement and the attending circumstances naturally suggest such was its purpose. The note which the mother indorsed was not paid, and, shortly before her death, she conveyed to her daughter the security which had been given her in that connection. The surrounding facts and circumstances strengthen the legal presumption that these instruments of even date operated together as a mortgage. In *Jeffery* v. *Hursh*, 58 Mich. 246 (25 N. W. 176, 27 N. W. 7) it is said:

"It is now settled, as well as any principle of law can be, that an absolute deed, with a bond or separate defeasance or agreement executed at the same time, to reconvey the estate upon payment of a certain sum of money, constitute a mortgage, if the instruments are of the same date, or are executed and delivered at the same time, and as one transaction; and when this

is the case, it is a conclusion of law that they constitute a legal mortgage."

This language is quoted with approval in *Reed* v. *Bond,* 96 Mich. 134 (55 N. W. 619) ; and the rule, also reiterated in *Clark* v. *Landon,* 90 Mich. 83 (51 N. W. 357), was early announced in *Swetland* v. *Swetland,* 3 Mich. 482. Defendant's testimony furnishes no convincing proof to overcome the strong confirmatory circumstances which support the conclusion of law which necessarily arises from the contemporary documentary evidence and undisputed facts.

It is further contended for defendant that the contemporaneous land contract from Mrs. Cashin to her son, agreeing to sell him the property for $450, contains no condition binding him to purchase, and the rights of the parties not being reciprocal, it operated only as a conditional sale, thereby affording no support for the presumption that his deed to her of even date was a mortgage, as it might were he obligated to buy. It is true the instrument does not in express terms state that he "hereby agrees to buy," as it does that she "hereby agrees to sell," but it is a contract signed by both parties detailing the customary provisions of an ordinary land contract with paragraphs as to what is "agreed by the parties," amongst which are that he agrees to pay all taxes assessed against said land, including the year 1908, and that the stipulations therein contained are to apply to and bind the heirs, assigns, etc., of the respective parties thereto. This is not a case where the deed is given in payment of an adequate, or any, purchase price, or even in liquidation of an existing debt. It was, we think, manifestly given only to secure and indemnify the grantee as the accommodation indorser of a note of the grantor. The conveyance extinguished no debt. A deed shown to have been so given, even without any defeasance obligation in writing, is held to be a mortgage. *Meeker*

v. *Warren*, 66 N. J. Eq. 146 (57 Atl. 421) ; *Dudley* v. *Buckley*, 68 W. Va. 630 (70 S. E. 376).

Being a mortgage in the beginning, the transaction remained a mortgage. The deed to defendant from her mother operated as an assignment of the latter's security. This defendant might, of course, have foreclosed, but she could not do so by merely declaring the contemporaneous contract forfeited.

Neither of these parties appeals to the court with any overweening equities. Defendant denied her brother's interest in the property, and then sought to cut him off by notice of forfeiture. Plaintiff, who figures as conveyancer in the transaction and was fully informed of her attitude, advisedly bought the brother's interest in the property, and with it a lawsuit. We are constrained to conclude that he has, under applicable principles of law, sustained his contention that the deed, considered with the contemporaneous contract, in the light of unquestioned surrounding facts and circumstances, constitutes a mortgage from which he has a right to redeem. Before commencing this suit he made no tender, but in his bill asked for an accounting. The court in its decree determined from the proofs what balance was required to redeem, which we see no reason to disturb, except that there should be added to the amount as decreed the taxes assessed against the property from and including 1908 until the death of Mary A. Cashin, which plaintiff's assignor by his contract expressly agreed to pay. So modified, the decree of the trial court is affirmed, without costs to either party.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.