## John Howell v. Leonard A. Merrill and others.

*Bill to quiet title: Demurrer: Boundaries: Extrinsic circumstances.* On de-
murrer to a bill to quiet title, involving a question of boundaries, or what
lands were intended to be conveyed by a certain description, which might be
more or less affected by oral evidence of circumstances difficult to set forth in
detail in the bill, the complainant is entitled to the benefit of all such extrin-
sic evidence as might be introduced in support of his theory of the question
under the case made by the bill.

*Allegation of possession: Demurrer.* As to the allegation of possession, an aver-
ment that complainant never, after the conveyance by him of adjoining prem-
ises, to which reference is made, knew that he had any land left there until
shortly before the filing of the bill, is held not so utterly repugnant to an ex-
press allegation of possession as to exclude evidence that both were true; and
it cannot, therefore, be held bad on demurrer.

*Bill to quiet title: Boundaries: Reference to line of another's land.* Where such
a bill makes a case in which the description in question is one bounded by
reference to the line of a third person, the true location of such line is one
of the necessary facts of complainant's case, which should be clearly and defi-
nitely set forth in the bill.

*Boundaries: Description: Distance: Line of another's land: Interpretation.* As
matter of interpretation or construction alone, without reference to any ex-
trinsic facts, a conveyance by a boundary, by a specified course and distance,
"more or less," from a given point to lands of a third person named, it is
held that the line of such lands, and not the specified distance, will govern.

*Description of lands: Boundaries: Distance: Line of another's land: Extrinsic
circumstances.* It seems, however, that in such a description, the line of the
land of such third person would not necessarily control the distance given, as
in the case of a known, fixed and tangible, designated monument, like a lake
or river, a ledge of rocks, or even a specified tree, provided it should appear
by extrinsic evidence that such line was obscure, or not definitely fixed, or
marked, or known, and therefore likely to be looked upon by the parties as
less certain than the measurement given.

*Deed: Description: Mistake: Remedy.* Where, after the complainant's convey-
ance by such a descripton, there followed·three mesne conveyances with a
like description, and then other mesne conveyances, clearly omitting the strip
of land lying between the boundary by the specified distance and the lands of
the third person named, and where the complainant's only right to such strip
of land would be a mere equity, growing out of a mistake in the description
in his deed, his appropriate remedy would be by bill to reform his deed.

HOWELL *v.* MERRILL.

*Equity pleading and practice; Parties.* Where, under such a state of circumstances, the apparent legal title of one of the mesne purchasers is sought to be defeated by extrinsic evidence of a mistake, or by the acts *in pais* of any of the mesne grantors, in making an actual location, or otherwise creating an equitable estoppel, the persons whose acts are relied upon, and whose rights are to be affected, are necessary parties.

*Submitted on briefs July 17. Decided October 13.*

Appeal in Chancery from Kent Circuit.

\* This case was heard in the Kent circuit upon demurrer to the bill; and the demurrer was sustained, and the bill dismissed. The complainant appeals.

The bill purports to be one to remove a cloud from plaintiff's title to a piece of land containing two and twelve-one hundredths acres, and asks a decree for a release.

The bill states substantially, that complainant, on the 31st May, 1851, was the owner of a piece of land in the county of Kent, described as follows, to-wit.: "Commencing at the quarter post on the west side of section number twenty-nine, in township number seven north, of range number eleven west, thence running south on the section line ten chains and ten links to the Thornapple road, so called; thence south, seventy-four degrees east, twenty-one chains and ten links; thence north on the east boundary line of the west half of the southwest quarter of section twenty-nine, sixteen chains and forty-four links; thence west on the quarter line nineteen chains and eighty-three links, to the place of beginning, excepting two acres in the southwest corner of said parcel theretofore conveyed to George M. Mills by Francis H. Cuming;" that on the said 31st May, 1851, complainant sold and conveyed by warranty deed to Robert Howell a portion of said land containing seven acres of land, which the bill describes by courses and distances, which conveyance was duly recorded July 15th, 1851, but the record since destroyed by fire; that on the 28th March, 1853, complainant conveyed by warranty deed to one James M. Patchin another portion of said first

---

\* This statement of the case was furnished by Judge Christiancy.

described lands, described in the deed to Patchin as "all that certain piece or parcel of land situated in the county of Kent, and state of Michigan, being part of section twenty-nine, in township seven north, of range eleven west, * * and more particularly described as follows, to-wit: being bounded by a line beginning at a point where the center of the Thornapple road, so called, intersects the eastern boundary of the west half of the southwest quarter of section twenty-nine; running thence northwesterly in the center of said Thornapple road *three and fifty one-hundredths chains, more or less, to Robert Howell's land*" [the question of boundary arises upon this part of the description]; "thence northerly, parallel to the eastern boundary of the west half of the southwest quarter of said section twenty-nine, fifteen and fifteen one-hundredths chains, more or less; thence southeasterly, parallel to the aforesaid Thornapple road, three and fifty one-hundredths chains, more or less, to the eastern boundary of the west half of the southwest quarter of said section twenty-nine, fifteen and fifteen one-hundredths chains, more or less, to the place of beginning, containing five acres of land;" that this deed was duly recorded July 17th, 1855.    The bill then proceeds:

And further, complainant shows that said James M. Patchin conveyed said land by the same words of description, by warranty deed, to Clark B. Albee, on the 23d day of January, 1860, which deed was recorded in said register's office on the 26th day of January, 1860, etc.; and that said Patchin also conveyed the same land by warranty deed to Timothy Murphy on the 26th day of March, 1861, which deed was recorded in said register's office on the 1st day of April, 1861, etc.; that said Clark B. Albee and his wife executed, acknowledged and delivered a quit-claim deed of the same property by the same description to said Timothy Murphy, on the 28th day of March, 1861, which deed was recorded in said register's office on the 1st day of April, 1861, etc; that on the 9th day of June, 1868, said Timothy Murphy and his wife conveyed by warranty deed, to

one Simeon L. Baldwin, a portion of said land so deeded to him, which said portion is described in the said deed to the said Baldwin as follows, to wit:     That piece or parcel of land situate in the county of Kent, etc.:   Being a part of section No. twenty-nine, in town seven north, of range No. eleven west, by United States survey in said state, and more particularly described as follows, viz.:   Being bounded by a line beginning at a point where the center of the Thornapple road, so called, intersects the eastern boundary of the west half of the southwest quarter of section No. twenty-nine; thence northwesterly in the center of said road three and fifty one-hundredths chains, to Robert Howell's land; thence northerly parallel to the eastern boundary of the west half of the southwest quarter of section No. twenty-nine, eight and forty-five one-hundredths chains; thence east three and twenty-nine one-hundredths chains to the eastern boundary of the west half of the southwest quarter of section No. twenty-nine; thence on the eastern boundary of the west half of the southwest quarter of section No. twenty-nine, nine and seventy-three one-hundreths chains to place of beginning, containing three acres of land, more or less; which said deed was recorded in the office of said register of deeds, on the 9th day of June, 1868, etc.

That on the 20th day of June, 1872, said Baldwin conveyed by warranty deed to Leonard A. Merrill, the same land so deeded to him, in the same words of description so written in his deed, for a consideration named in the deed as twenty-seven hundred dollars, which deed was duly recorded, etc.

And complainant further shows upon information and belief that said Leonard A. Merrill still holds the said land so conveyed to him by said deed, or the greater part thereof, as is hereinafter fully set forth.

And further, complainant shows that when he sold said parcel of land, as above stated, to said Robert Howell, he had bargained to said Robert Howell seven acres of land, and he employed a surveyor named Slauson to survey and

establish the boundaries thereof, who, together with the said Robert Howell and others, went and measured out said seven acres described in said deed to said Robert; and complainant made said deed to said Robert, according to the survey so made, without having examined the lines made; that at the time of the survey, and from that time until after the said deed to said Patchin the entire of said land so bought of Cuming was covered with thick and high oak bushes and trees.

And further, complainant shows that some time in the month of March, 1855, he bargained to said James M. Patchin five acres of said land for the sum of four hundred dollars, and procured a surveyor to measure off the same, and went with him and assisted in the measurement thereof; and having measured said first line described in said deed to said Patchin, designated as northwesterly in the center of the Thornapple road, three and fifty one-hundredths chains, more or less, to Robert Howell's land, complainant then supposed that he had arrived and come to the line and boundary of said land deeded to Robert, so that in the description made and afterwards put in the deed to Patchin, that line was described as set forth as running to Robert Howell's land, while in fact Robert Howell's land was three and four one-hundredths chains away; that at the said point where said measurement terminated, and where he then supposed Robert's land commenced, there was no mark, monument, stone, stake, or tree, or other notorious or visible thing to designate the line of Robert's land, and the line was located in the thick bushes, and complainant was acting under a mistake when he supposed the said point to be the line of the land so deeded to Robert, and when he made said deed to Patchin, describing said line as running to Robert Howell's land, he made a mistake in describing the land so bargained and sold.

And further, complainant shows that he has caused surveys and measurements of said land to be made, and has

caused to be made a map of the several parcels so by him conveyed, sufficient to show the source of the difficulty in this cause, which said plat is attached, etc.

And further, complainant shows that immediately after said sale to said Patchin, he, Patchin, entered into possession of the land so conveyed, and only claimed or took possession of the parcel of land described in his said deed by metes and bounds, and recognized the west line of his said purchase to be where it would be situate if the words *" more or less to Robert Howell's land,"* had been left out, and while he held and owned the land so sold to him, he continually recognized that to be the line, and when he sold and conveyed the same, he sold the parcel for five acres of land, and only claimed and sold to said line; and said Albee and said Murphy when they bought took with notice and distinct understanding that the said west line was so located; that soon after said Murphy so bought and took possession of said land, and some time in the year 1861, as near as complainant can remember, said Murphy and complainant, together, went upon the land and agreed upon the line, and then for the first time built a line fence, of which said Murphy built one-half and complainant the other, when they together adopted the same as the division line, and soon after that said Murphy commenced clearing the said land up to the line of the said fence, and occupied the whole parcel to said fence until in the month of June, 1868, when he conveyed three acres thereof to Simeon L. Baldwin, the description in his said conveyance being as set forth above in this bill; that when said Baldwin so purchased said land of said Murphy, he had notice that the line had been so located and agreed upon; that said fence was there, and Murphy showed him that, and explained that it was the western boundary of the said land; and while Baldwin held the said land he recognized said line as his boundary, and only claimed the three acres described by courses and distances in his said deed.

And that when said Baldwin so deeded to said Merrill

he only sold and bargained with him for three acres of land, and stated to said Merrill that said fence was the line, as complainant is informed and believes; that said Merrill bought the land conveyed to him in said deed for three acres of land, and knew that said fence had been, and was, the western boundary thereof, and that it had been settled as such by the parties formerly owning the same.

And he further shows that soon after the said Merrill so bought the said land and received the said conveyance, he set up a claim to the ownership by virtue of said conveyance, of that piece of land lying between said land so deeded to him, or said west line thereof so established, and said Robert Howell's land, described above, and claimed that the words "*to Robert Howell's land,*" added to the course and distance mentioned, had the effect to extend said line said three and four-one hundredths chains to said land so deeded to Robert Howell, and so would include in his deed that land lying between said line and Robert Howell's said land; that shortly after such purchase by said Merrill, he came to complainant and stated that he, complainant, owned a small piece of land between the land by him bought of Baldwin and the Robert Howell land, that had passed into the hands of one Dwight Nims, and that he, Merrill, wanted to plat this land jointly with said Nims, and for that purpose wished complainant to quit-claim to him what he owned between the said two parcels of land; and that complainant having forgotten how the land had been divided up, and not then believing that this parcel of land remaining unsold was situated there, told said Merrill that he owned no land in that place; that said Merrill then asked complainant to give him a quit-claim deed of it, and said he would give him fifty dollars for a quit-claim deed, whether he owned it or not, but this complainant refused to do so, but soon after commenced investigation to find out what land he did own out of said original parcel, when he found that it was true that his land was in part

situated between the land so bought by Merrill and the Robert Howell land bought by Nims.

And complainant further shows that soon after said conversation between him and said Merrill, said Merrill for the first time set up a claim of ownership by virtue of his said conveyance, to the entire of the land lying between that bought by him and the Robert Howell land, knowing such claim to be a false and fraudulent one, as complainant believes and so alleges; and that said Merrill now gives out and pretends that he is the absolute owner thereof, and offers the same for sale to whomsoever may wish to purchase ; that said Merrill, together with said Nims, have procured a plat to be made covering said land deeded to Robert Howell, said land deeded by Murphy to Baldwin, and by Baldwin to Merrill, including said parcel of land so belonging to complainant, and lying between said Robert Howell's lot and the lot so deeded to Merrill, treating complainant's said parcel of land as conveyed to said Merrill by his said deed from Baldwin, which said plat was duly executed and acknowledged, and recorded, etc.; that by said plat so of record, there is located upon said parcel of land belonging to complainant, situated between said Robert Howell's parcel and the Patchin parcel, as shown by exhibit " A," the following lots and parts of lots on and according to the said plat of Merrill and Nims' addition, to-wit.: [describing them] ; while by said plat another portion of said parcel of lands so belonging to complainant is designated as public streets.

And complainant shows upon information and belief that said Merrill has sold by contract to one Charles C. Foster, lot one, of block three of said Merrill and Nims' said addition, but that said Foster, before and at the time of the purchasing of said lot, had full notice of complainant's rights and claim in the premises, and complainant for that reason makes said Foster defendant to this bill.

And complainant shows that he has owned in fee simple and held actual possession of said parcel of land lying

between said parcel of land so sold by Baldwin to said Merrill and said parcel sold to Robert Howell, as marked and shown upon said exhibit "A," hereto attached, the entire time since the 7th day of August, 1850.

And complainant shows that that parcel of land in question, so between said Robert Howell's land and said parcel deeded by Baldwin to Merrill, that so belongs to complainant, contains two acres and twelve one-hundredths of an acre of land, and that the same is worth from twelve to fifteen hundred dollars per acre, and said parcel in question is worth, as he believes, three thousand dollars.

And he further shows that he has never sold or conveyed said parcel of land in question to any person whomsoever, and never conveyed the same unless the said deed to Patchin shall be deemed to be a conveyance thereof; but complainant insists that that deed did not convey it, and that said Merrill and others who went upon said land for the purpose of making said surveys for said plat, went upon the same without the consent or permission of the complainant, and were mere trespassers upon the said land so in complainant's possession, and that he, immediately after hearing what said Merrill had done, commenced proceedings to clear up and establish his rights in the premises; that since the said Merrill so received said land and made said plat, complainant has caused an application to be made to said Merrill to quit-claim said land in question, and release the same to the complainant, and an offer to draw and take the acknowledgment of said deed without expense to said Merrill, but said Merrill absolutely refused, and still refuses, to execute such deed, but insists that he is the absolute owner of said land.

And further, complainant shows that said parcel of land in question may be described as follows, to-wit: That piece of land situate in section twenty-nine, in township seven north, of range eleven west, in the county of Kent and state of Michigan, bounded by lines as follows, to-wit: Commencing at a point in the center of the Thornapple

road, so-called, which is three and fifty one-hundredths chains northwesterly from a point in the center of said Thornapple road, which is the east boundary line of the west one-half of the southwest one-quarter of said section twenty-nine; thence northwesterly along the center of said Thornapple road three and four one-hundredths chains, to land deeded by John to Robert Howell; thence in a northerly direction along the eastern line of said Robert Howell's land eight and twenty-four one-hundredths chains; thence easterly two and thirteen one-hundredths chains; thence south eight and forty-four one-hundredths chains to the place of beginning; but for the location and description of the same, especial reference is made to the plat attached, marked exhibit "A."

And complainant shows that during all the time he has so held possession of said land, as set forth above, his possession has been peaceable and unquestioned, and that the first question that has ever been raised in relation to the land, was raised by said Merrill as set forth, after his purchase, and some time in the month of October last;

And that the said Leonard A. Merrill has a wife, whose name is Sarah C. Merrill, who claims a dower interest in said land, whom complainant now makes defendant to this bill.

The causes of demurrer were, *first*, that the said complainant hath not, in and by his said bill, made or stated such a case as doth or ought to entitle him to any such recovery or relief as is thereby sought and prayed for, from or against these defendants; and, *second*, that it appears in and by said complainant's said bill, that the said complainant seeks and prays to have modified or altered, by the decree of this court, a deed made, executed and delivered by said complainant to James M. Patchin; a deed made, executed and delivered by said James M. Patchin to Clark B. Albee; a deed made, executed and delivered by said Clark B. Albee to Timothy Murphy; a deed made, executed and delivered by said Timothy Murphy to Simeon

L. Baldwin, and a deed made, executed and delivered by said Simeon L. Baldwin to the said defendant, Leonard A. Merrill; and yet the grantees in the several deeds aforesaid (except the said Leonard A. Merrill) are not made parties defendant in said bill, neither is the said complainant a party to either of said deeds sought to be modified or altered, or privy thereto, except to the deed from said complainant to said Patchin.

*G. Chase Godwin* and *John T. Holmes,* for complainant.

*J. W. & O. C. Ransom,* for defendants.

CHRISTIANCY, J.

It will be seen by the bill and the demurrer, that the first and one of the main questions in the case, is one of boundary, or what land was conveyed by the description in the deed from complainant to Patchin, as well as by that in the deed from Murphy and wife to Baldwin, and, if the former conveyed all the land to the line of Howell's land, whether the latter also conveyed to the same line.    It is obvious that this question of boundary, or what lands were conveyed, might be more or less affected by oral evidence outside of the deed, the situation of the land, its previous chain of title, and many other circumstances difficult to be set forth in detail in a bill; and in considering the question upon demurrer complainant must have the benefit of all such extrinsic evidence as might have been introduced in support of his theory of the question, under the case made by the bill.

So far as relates to the deed to Patchin, and all the subsequent conveyances down to Murphy, repeating the same description of the premises, the question of boundary, or what was intended to be conveyed, considered as one of interpretation or construction, and without reference to the practical location made upon the ground by the parties, the location of division fence, or any acts amounting to an

equitable estoppel,—would seem to be a very plain one. By the language "thence northwesterly in the center of said Thornapple road three and fifty one-hundredths chains, *more* or *less,* to Robert Howell's land," it is plain the parties must be held to have understood that the exact distance given was not to govern, and that the course given was to run to Robert Howell's land, whether the distance should be more or less than the three chains and fifty links. This could hardly have been rendered more clear by any express declaration, though the parties may, by *mistake,* have understood that the line of Howell's land was at or very near that distance, and not so far as by actual measurement of the several tracts it afterwards turned out to be.

Assuming, for the present, that Murphy's deed to Baldwin, with that from Baldwin to Merrill, did not of itself convey the whole land up to Howell's line, or that if it might otherwise have done so, yet by the acts of Baldwin or his grantor, a practical location had been made which would bind him to a line short of that, and where complainant claims it ought to be; still, upon the case made by the bill, the entire paper and recorded title, to the parcel in dispute, in other words, the legal title, would appear clearly to be vested in Murphy, whose deed, as well as Albee's, described the lands in the very words of complainant's deed to Patchin; and the only right which the complainant, by his own showing, could have in the disputed parcel, would be a mere equity, growing out of a mistake in the description of the land in complainant's deed to Patchin, as well as in Patchin's to Albee, and Albee's and Patchin's deeds to Murphy. And for the purpose of establishing this mistake, the appropriate, and it seems to me the only true remedy of complainant, would be by bill to reform the deed by a correction of the mistake. And until it is corrected by the appropriate decree, or until Murphy either releases to complainant, or upon a bill filed, disclaims having acquired any interest to the disputed tract, complainant does not put himself in a position which entitles

him to call upon the present defendants for a release
(which if given might be unavailable to him), or for any
other remedy.

Now, so far as the apparent legal title of Murphy
might be affected by extrinsic evidence of a mistake, or by
the acts *in pais* of him or his grantors, in making an
actual location, or otherwise creating an equitable estoppel,
so as to confine the effect of the deed short of Howell's
line, Patchin and Murphy, at least, whose acts are relied
upon, are entitled to be heard before their right can be
determined upon. No decree affecting their rights, or
based upon a denial or adverse determination of their
rights, could properly be made in this suit, to which they
are not parties. This suit, between the present parties,
does not, therefore, determine the controversy.

It seems to me, therefore, that, under the present bill,
we can hardly, with propriety, determine the question of
boundary, as presented by Murphy's deed to Baldwin, or
Baldwin's to Merrill, or whether the description in those
deeds includes the land in question, nor how far the effect
of these deeds of themselves might be modified or controlled
by any acts *in pais* of Murphy, Baldwin, or Merrill.

It may, for the purposes of the present case, be ad-
mitted that the description in Murphy's and Baldwin's
deeds do not so clearly cover the land in dispute as the
deed of complainant to Patchin, and the others, down to
Murphy; and that when the distance to the land of a third
person is given, the line of the land of such third person
would not necessarily control the distance given, as in the
case of a known, fixed and tangible, designated monument,
like a lake, or river, a ledge of rocks, or even a specified
tree,—that this might, as I am inclined to think it would,
depend much upon the question whether the line of the
land referred to had become so certain and fixed by fences,
exclusive occupancy, or visible monuments, in other words,
so notorious, as to raise a fair probability that the parties
relied upon such line as more certainly right than the dis-

tance given; or whether, on the other hand, the exact line of the land referred to was obscure, or not definitely fixed or marked, and therefore likely to be looked upon by the parties as less certain than the measurement given. And the personal knowledge and contemporaneous acts of the parties might have some bearing upon the question.

As to the deeds, however, of Murphy to Baldwin, and Baldwin to Merrill, the theory of the complainant's case, as made by the bill, is not necessarily that there is any mistake in the description which needs correction, as the bill would be equally sustainable if the evidence should show, in connection with the deed, that the lands in dispute were not included.

As to the objection made by the defendants that the bill does not show that the complainant was in possession at the bringing of the bill,—it is admitted that the bill contains an express allegation of such possession; but it is insisted that, as the bill shows in other portions of it that complainant never, after conveying to Patchin, knew that he had any land left there, until shortly before the bill was filed, this is utterly contradictory of the complainant's continued possession alleged in the bill, or of his possession at the commencement of the suit.   I do not think the one allegation is so utterly repugnant to the other that no evidence could be admissible to show that both were true. Though, for instance, the complainant was ignorant of his ownership until about the time suit was brought, and therefore was not personally in possession, some other person may have all along been in possession intending to hold for him, whose acts he would have a right to adopt; and he might show also that he had taken peaceable possession personally afterwards, and held it when the suit was commenced.

I think the bill is defective for want of parties as above explained, and if complainant should amend, it may be well to consider whether, owing to responsibility over upon the

covenants of warranty, other parties than those I have indicated may not be necessary, or at least proper.

It may be proper also to remark here, though not noticed by counsel, that the true location of the line of Robert Howell's land is one of the necessary facts of the complainant's case, and that there is apparently such a repugnacy in the description of the tracts conveyed by complainant to Robert Howell as to make it difficult, if not impossible, to locate the land correctly, from the description given in the bill.

The decree of the court below must be affirmed, with costs.

The other Justices concurred.