CUTLIFF *v.* DENSMORE.

1. Boundaries—Shore Line of Water-front Property—Government Meander Line.

The shore line of inland water-front property, as represented on government plats by a meander line, is the boundary of the property, notwithstanding its subsequent advancement or recession.

2. Waters and Watercourses—Inland Lakes—Changing Shore Line—Government Meander Line.

Owners of adjacent inland lake-front property are entitled to the just proportion of shore line based on meander line of government plats as shore line advances or recedes.

3. Pleading—Reply—New Theory—Court Rules.

Intent of court rule providing that plaintiffs' reply should be used to answer new matter alleged in defendants' answer was intended to permit a reply to new matter in avoidance of plaintiff's claim, not merely in contradiction of it but does not permit plaintiff to set up a new theory to support their cause (Court Rule No 24 [1945]).

---

References for Points in Headnotes

[1] 56 Am Jur, Waters § 477 *et seq.*; 8 Am Jur, Boundaries § 30.
Status of title of land bordering on Great Lakes [and State inland lakes], between meander line and shore line, originally bare or subsequently made bare by reliction or other natural gradual process.   71 ALR 1256.
[2] 56 Am Jur, Waters § 495.
[3, 4] 41 Am Jur, Pleading § 178.
[5, 6] 18 Am Jur, Ejectment §§ 101, 102.

4. SAME—REPLY—EJECTMENT—COURT RULES.

　　Plaintiffs' reply to defendants' answer in action of ejectment was properly stricken upon defendants' motion therefor, where declaration was based on deed to disputed land and reply set up a claim of title in the accreted lands by adverse possession, since the matter in the reply could not properly be considered (Court Rule No 24 [1945]).

5. EJECTMENT—AMENDMENT OF DECLARATION NUNC PRO TUNC—DISCRETION OF COURT.

　　The grant or denial of a motion to amend a declaration in ejectment *nunc pro tunc* so as to include claim of title by adverse possession was discretionary with trial court.

6. SAME—AMENDMENT OF DECLARATION NUNC PRO TUNC—DISCRETION OF COURT.

　　Denial of motion to amend declaration in action of ejectment *nunc pro tunc held,* not an abuse of discretion on part of trial judge, where motion was made over 4 years after declaration was filed and would have caused undue surprise or hardship to defendants, the declaration having been based on a deed claimed to have conveyed the accreted land and the amendment setting up claim of adverse possession.

7. ADVERSE POSSESSION—TACKING POSSESSION—DEEDS.

　　Claim of adverse possession of accreted lands, which had been conveyed to plaintiffs before commencement of ejectment action, *held,* not substantiated, where plaintiffs rested their claim upon 6 years of personal possession but failed to show that deed from grantor whose possession they sought to tack made an express reference to or description of the disputed property.

Appeal from Cheboygan; Fenlon (Edward H.), J. Submitted October 7, 1958. (Docket No. 5, Calendar No. 47,450.) Decided December 3, 1958.

Ejectment by Neal Cutliff and Lola Cutliff against U. Harry Densmore and Wauneta Densmore in respect to lands on shore line altered by accretion. Judgment for defendants. Plaintiffs appeal. Affirmed.

*John R. Monaghan,* for plaintiffs.

*Jennings, Fraser, Parsons & Trebilcock (Eugene F. Townsend, Jr.,* of counsel), for defendants.

Voelker, J. This case involves accretion* somewhat complicated by "decretion." In the original government plat, made in 1855, the 4 lots in question abutted each other roughly in the shape of a block capital letter L. Lot 1, the northernmost of the 4 lots, was at the top of the vertical portion of the L. Lot 2 abutted lot 1 immediately to the south to form roughly the center of the vertical portion of the L. Lot 3 abutted lot 2 immediately to the south to form the base of the vertical portion of the L. Lot 4 abutted lot 3 immediately to the east to form the sole horizontal portion of the L.

In 1855 there was a small bay in Burt lake lying roughly adjacent to the inner angle of the L formed by the 4 lots in question. Because of the scalloped shore line of the bay each lot, including lot 3, had some varying portion of the shore line of Burt lake as one of its boundary lines. Since the original plat was made the contour of the bay has been changed by the century-long shifting of sand, augmented by wind and waves, causing an accretion of land between the present shore line and lots 3 and 4, and, also, a measure of what we shall call decretion as to the others. As the shore line now stands, instead of following roughly the shape of an L as it did origi-

---

* In order to present this fairly complicated fact situation as simply and concisely as possible we have used the term accretion in its broad general meaning (rather than the more precise terms of alluvion, reliction or dereliction) to explain how the land in question was created. See Accretion, Black's Law Dictionary (4th ed), p 36. To understand this opinion we think it is sufficient to know that new land was created by the gradual and natural change in the contour of the original shore line of a lake. Notwithstanding the precise causes of the change, the legal principles involved are the same.

nally, the shore line now cuts almost straight across diagonally from the northern tip of the L to the easternmost end of the base of the L. If we have successfully projected this pictorial description, it will be noted that the shore line has receded largely from the inner angle of the L and sharply reduced the total shore line in so doing. In fact at its greatest point the shore line receded approximately 750 feet from such inner angle.

The present controversy began when appellees Harry and Wauneta Densmore the present owners of the north 1/2 of lot 3, had a surveyor stake out their portion of the accreted land. He did so by surveying the present shore line and then dividing it exactly among the 4 lots in the same proportion that each lot bore to the original shore line as depicted by the meander line on the original government plat. In order to give each lot its correct share of the existing shore line the surveyor drew 2 lines running obliquely in a northeasterly direction from the 2 outer points of the original shore line of lot 3 to the present shore line. He then staked out the land according to his survey and appellees took possession.

Plaintiff-appellants, the present owners of lot 4, brought this action in ejectment December 4, 1950, claiming title to the premises through a deed dated October 19, 1945. It is their theory that the surveyor should have extended the western boundary line of lot 4 straight north to the lake, giving them, as owners of lot 4, all the land lying east of it; and that he should further have continued the north-south and northerly east-west boundary lines of lot 3 until they intersected in the accreted land. To have done so would have left lot 3 with but an extremely small proportion of the accreted lands and moreover would have left both land and the owners thereof high and dry with no access whatever to the lake.

An answer was filed on behalf of the defendants on March 22, 1951. Substitution of attorneys occurred for both parties, and the case was not finally heard by the trial court until September 14, 1955. On August 2, 1955, shortly before the trial, plaintiffs' new attorney filed a reply to the answer filed by the defendants' original attorney back in 1951. This reply for the first time sought to set up a claim of title in the accreted lands by adverse possession. Upon the trial defendants' counsel moved to strike the reply as not being timely filed and, also, because it set up a new cause of action. Plaintiffs countered by moving to amend their declaration *nunc pro tunc* to embrace this new claim of title. The court reserved judgment on the motions and on September 21, 1955, handed down an opinion upholding the motion of defendants' counsel to strike the reply and denying the motion of plaintiffs' counsel to amend the declaration. Subsequently (on December 21, 1956) the trial court entered judgment holding that the defendants were the owners of the property in dispute.

The first issue presented is whether the trial court erred in holding, as it did, that the defendant-appellees acquired title to the disputed property by accretion. In Michigan the law is clear that where property abuts a shore line, that shore line (as represented on government plats by a meander line) is the boundary of the property notwithstanding its subsequent advancement or recession. Thus in this case where the shore line receded approximately 750 feet the defendants acquired by accretion their just proportion of all of the land between the old and the new shore lines. For an exhaustive discussion and review of this subject, see the leading case of *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238).·

Let us test the plaintiffs' claim to the property by reversing the situation. We think it would be just

as logical for the defendant-owners of lot 3 to have extended their boundaries straight east to the lake as it was for the plaintiff-owners of lot 4 to seek to extend their boundaries straight north to the lake. In either case the result would be the same: one side would have the bulk of the accreted property, the other little or nothing. An acceptance of appellants' theory would result in a wild race for accreted lands, with victory going to the fleetest; the first property owner who thus boldly undertook to extend his lot line and filed a declaration in ejectment against the others would get everything and those less diligent (or possibly less self-seeking) might be left with no access to the water whatever, as here. Manifestly such a race should not be encouraged by the courts, for many reasons, and presumably our learned predecessors had precisely this in mind when they originated the rule of just proportion so clearly expressed in *Hilt* v. *Weber, supra.*

The second issue in this case is: Did the trial judge err in granting defendant-appellees' motion to strike the reply and at the same time denying plaintiffs' motion to amend their declaration *nunc pro tunc?* Michigan Court Rule No 24 (1945) says that a reply should be used to answer new matter alleged in the answer. The intent of that rule was spelled out in *Dramis* v. *Dunbar,* 280 Mich 300, 304, 305, which says:

"The court rule was intended to simplify, not to complicate the practice, to define the issue, not to confuse it by requiring court and counsel to balance each allegation against each other allegation in the pleadings on apothecary's scales. The rule requires 'new matter' to be answered, not every new allegation of fact. When a plaintiff sets up the circumstances of a transaction, defendant's statement of a different set of circumstances calls for no reply by plaintiff unless defendant's answer alleges facts

which would defeat plaintiff's cause of action even though he proved all the allegations of his declaration. *In substance, 'new matter' means matter in avoidance of plaintiff's claim, not merely in contradiction of it."* (Italics added.)

The answer in this case did not contain new matter; rather it simply denied the allegations in plaintiffs' declaration and alleged facts to support those denials. Plaintiffs' subsequent claim of title by adverse possession therefore was not properly a replication to the answer but rather a new theory to support their cause and thus should have been included in the declaration. It follows that the matter in the reply could not properly be considered and the court was correct in granting defendants' motion to strike.

The grant or denial of plaintiffs' motion to amend their declaration *nunc pro tunc* so as to include their claim of title by adverse possession was discretionary with the trial court. The trial judge thought that granting the motion at the time it was made (over 4 years after the declaration was filed) would have caused undue surprise or hardship to the defendants. There was ample evidence in the record to support that conclusion, and we find no abuse of discretion by the trial judge in denying the motion to amend. See, generally, *Jackson City Bank & Trust Co.* v. *Blair,* 333 Mich 399 (32 ALR2d 920), and cases therein cited.

We may nevertheless add that plaintiffs, who had the opportunity to give their evidence below, rested their claim of adverse possession upon 6 years of personal possession, plus the prior possession of their grantor, without showing an express reference to the disputed property in their deed from their grantor. In Michigan the law is clear that where one seeks to tack the prior adverse possession of his grantor he must show an express

reference to or description of the disputed property in the grantor's deed. *Jeffries* v. *Sheehan*, 242 Mich 167. Having failed to do so the plaintiffs in any event failed to prove their claim of title by adverse possession, thus rendering any possible error of the trial court without prejudice and of no consequence.

The judgment of the trial court is affirmed. Costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.