### WEISENBURGER v. KIRKWOOD.

1. BOUNDARIES—ESTABLISHMENT—ACQUIESCENCE.

   Establishment of a boundary line between adjacent lands by acquiescence requires either the establishment of an agreed line as a settlement of a bona fide controversy or the resolving of a doubt as to where the line is, or acquiescence in a line for more than the period of the statute of limitations if there has been no bona fide controversy as to the boundary.

2. SAME—ACQUIESCENCE—EVIDENCE.

   Doctrine of acquiescence *held*, not applicable in a case in which the record failed to show the resolution of a doubt or settlement of a bona fide controversy by the parties or their predecessors contemplating an agreed line, the fixing of a line, setting monuments on such a line, or in some other manner establishing a visible common boundary line, or acquiescence in the nature of compliance or acceptance, tacitly or passively, of an agreed line.

3. DEEDS—DESCRIPTION—AMBIGUITY.

   Deed to B, containing a description touching A's northern boundary at one point, but not coinciding with A's northern boundary, and ending with the words "the southerly line of the above described parcel being the northerly line of parcel previously deeded to A", *held*, ambiguous as to whether B was intended to take the gore of land lying between his description and that

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Boundaries §§ 85, 86.
   Establishment of boundary line by oral agreement or acquiescence. 69 ALR 1430, 113 ALR 421.
[2] 12 Am Jur 2d, Boundaries § 85.
[3, 4] 23 Am Jur 2d, Deeds § 236.
   12 Am Jur 2d, Boundaries §§ 64–76.
[5] 56 Am Jur, Waters §§ 476–481, 494.
[6] 56 Am Jur, Waters §§ 494, 495, 498.
[7] 20 Am Jur 2d, Costs §§ 11, 14–16.

of A, in case where both A and B claimed to exercise possessory rights over the gore, and the county supervisor, in preparing a supervisor's plat, split the gore between the parties.

4. SAME—CONSTRUCTION—AMBIGUITY.

Deeds to parties which are ambiguous in that they leave a gore of land between the parties, giving rise to a dispute as to ownership of the gore, require construction as to intent, arrived at upon consideration of the language of the descriptions, the nature of the descriptions (one being general and one being specific), maps, surveys and similar documents, the attitudes of the owners and their common grantor as shown by their actions, and other relevant and pertinent evidence of surrounding circumstances relating to and aiding a determination of the intent of the parties.

5. BOUNDARIES—RIPARIAN LANDS—RELICTED LAND—RULE OF PROPORTION.

Owners of inland lakefront property which has been added to by reliction of the lake are entitled to the just proportion of the land between old and new shorelines.

6. SAME—SHORELINE—RELICTED LAND—JUDGMENT.

Judgment of court determining relative length of shoreline owned by adjoining owners on relicted inland lake lands, based on the proportion of shoreline owned by them on the lake before reliction occurred, but not setting the dividing line between the parties, or determining the starting or ending points of their shorelines, *held*, correct, in case where the court was not furnished with sufficient information, in the form of a survey, to draw such lines.

7. COSTS—NEITHER PARTY PREVAILING.

No costs are allowed on appeal from judgment of trial court determining boundary lines between adjoining property owners and their relative lengths of shoreline on inland lake, in a case where the judgment of the trial court is affirmed in part and reversed in part, because neither party prevailed in full.

Appeal from Newaygo; Van Domelen (Harold), J. Submitted Division 3 December 7, 1966, at Grand Rapids. (Docket No. 1,318.) Decided July 10, 1967.

Complaint by Karl H. Weisenburger and Stella Ann Weisenburger, his wife, against John Kirkwood

and Virginia Kirkwood, his wife, and Nicholas M. Szekely and Martha E. Szekely, his wife, to determine title to land, and to determine rights in lands formerly submerged which have become uncovered by dropping of a lake level. Judgment determining that plaintiffs own part of disputed land and defendants own the rest, and allocating ownership of lands uncovered by falling of lake level. Plaintiffs appeal. Affirmed in part and reversed in part.

*Vander Veen, Freihofer & Cook* (*Donald F. Oosterhouse,* of counsel), for plaintiffs.

*John W. Shepherd,* for defendants.

HOLBROOK, J. This appeal concerns the determination of common boundary lines between plaintiffs' and defendants' adjoining lake lots on Bills lake in Newaygo county, Michigan.

The pertinent facts appear as follows: Through their predecessors in title plaintiffs and defendants have a common grantor. The common grantor deeded a parcel of land in 1944 to defendants' predecessor in title, Paul Kovach, giving the following general description:

"Commencing 459.26 feet east and 90.64 feet north of southwest corner of government lot 4 of section 30, township 12 north, range 11 west, thence east 161 feet, to water's edge, thence north 25° east 100 feet, thence west 161 feet, thence south 25° west 100 feet to the place of beginning."

The common grantor also deeded a parcel of land in 1947 to plaintiffs' predecessor in title, giving the following description:

"Part of government lot 4, section 30, township 12 north, range 11 west, described as commencing

at the one-quarter post on south side of said section, thence east on sec line 411.8 ft to an iron pipe, thence north 24° 30′ E 219 feet to an iron stake (this being the place of beginning), thence N 24° 30′ E 73 feet, thence south 68° 10′ E 192 feet to the high water mark of Bills lake, thence Sly along high water mark 50 feet to an iron stake, thence N 83° 30′ W 161 feet to place of beginning; *the southerly line of the above described parcel being the northerly line of parcel previously deeded to Kovach.*" (Emphasis supplied.)

Plaintiffs entered into possession of their lake lot in 1952 and defendants entered into possession of their lake lot in 1957.

The controversy of the parties arises over a triangular piece of property, not covered by either of the parties' metes and bounds descriptions, lying between the south line of plaintiffs' lake lot and the north line of defendants' lake lot. An iron stake has been placed at the one point where the metes and bounds descriptions of the parties meet, which is the vertex of the triangle and the point closest to Bills lake. From this one point, the triangle in question extends in a westerly direction to Stray Drive where the base of the triangle is located.

Plaintiffs claimed to have exercised possession over the triangular piece of land in the form of mowing the grass, raking leaves and cutting weeds thereon since 1952. Conversely, the defendants claimed to have exercised possession themselves and through their predecessor in mowing the grass, raking the leaves, and maintaining a well house, well pit, and fireplace either in part or wholly within the triangle since 1948. Although the well house and fireplace were later removed, defendants piled wood in that area.

Plaintiffs also claimed that the last clause of their property description (which appears in italics,

*supra*) manifests an intention on the part of the common grantor to convey all property north of the metes and bounds description of the Kovach property to plaintiffs' predecessor in title.

In 1958, the county supervisor prepared and recorded supervisor's plat No 1, Croton township, Newaygo county, Michigan. This plat, among other things, defined both plaintiffs' and defendants' property by lot numbers including their common boundary line.

After hearing the testimony and considering the exhibits, and having visited and viewed the area in question, the trial judge concluded that the errors in description rendered impossible any reconciliation of the deeds aside from the one common point. Then in equitably resolving the controversy, the trial judge made the following determination:

"The supervisor's plat allocates to plaintiffs 0.2 of one foot more frontage on Bills lake and 3.8 feet more frontage on Stray Drive than their description demands; that said plat allocates [to defendants] 1.53 feet less frontage on Bills lake and 5.3 feet more frontage on Stray Drive than their description demands; that the parties and their predecessors in title have acquiesced in a line substantially corresponding to the plat line for a number of years; that the court has viewed the premises, and such view confirms the plat line as the line that has been recognized and used as the boundary by the parties; that no inequity results from the boundary as placed by the plat line.

"The law applicable to this case is found in *Jackson* v. *Deemar,* 373 Mich 22, and cases cited therein. 'If acquiescence follows resolving a doubt as to where the line is  *  *  *  such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period.' In said case, it was also held that the acquiescence

of predecessors in title can be tacked on that of the parties.

"Therefore, it is the opinion of this court that the line between the land of the parties hereto as established by the supervisor's plat No 1 of Croton township is the line as determined by the acquiescence of the parties and that such line is equitable and fair to both parties."

Also of concern in the trial court and here on appeal is a further controversy between these parties, to wit, the direction their common boundary line is to take because of the receding shoreline of the bay on which the parties' property is located. The shoreline of Bills lake has receded some 30 or more feet from the metes and bounds descriptions contained in the deeds of the parties.

In resolving this particular controversy, the trial judge applied the ruling in *Cutliff* v. *Densmore* (1958), 354 Mich 586. Therein, it was held that owners of inland lake front property are entitled to the just proportion of the land between old and new shorelines. Using the supervisor's plat to determine the respective numerators and the denominator, the trial judge found that plaintiff was to receive as a just portion 33.75% and defendant 66.25% of "the shoreline allocated to the parties hereto on a proportionate basis considering all the property owners around the bay."

Plaintiff appeals these equitable decisions of the trial court raising 2 issues: (1) Whether a common boundary line was established between the property of the parties by resolution or agreement followed by acquiescence and (2) whether a boundary line should be drawn from the common point of both parties' property near the lake to the center of the cove or bay.

Adverse possession over the disputed triangular piece of land was not established by either party.

Plaintiffs contend that the trial court's theory of acquiescence is not sustained by the pleadings and evidence. The doctrine of acquiescence, as recognized in Michigan, is found in *Jackson* v. *Deemar* (1964), 373 Mich 22. Therein, the Michigan Supreme Court quoted from *Johnson* v. *Squires* (1956), 344 Mich 687, 692, as follows (pp 25, 26):

"We had occasion, in the case of *Renwick* v. *Noggle,* 247 Mich 150, to examine the doctrine of acquiescence in the establishment of boundary lines and we there held (p 152):

" 'The rules for establishment of a boundary line by acquiescence are summarized by Mr. Justice FELLOWS in *Hanlon* v. *Ten Hove,* 235 Mich 227, 231, 232 (46 ALR 788):

" ' "While acquiescence alone is not a defense, if acquiescence follows the resolving of a doubt as to where the line is or the settlement of a bona fide controversy, which settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter, such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; *likewise where the line is acquiesced in for the statutory period it is also fixed.*" [Emphasis in *Johnson* and *Renwick.*]

" 'In that case it was held that the acquiescence of predecessors in title can be tacked on that of the parties, and if the whole period of acquiescence exceeds 15 years, the line becomes fixed, *regardless of whether there had been a bona fide controversy as to the boundary.*' " [Emphasis in *Jackson.*]

Meticulous examination of the record fails to reveal the required facts allowing for application of the doctrine of acquiescence; there is no evidence or testimony in the record of a resolution of a doubt or settlement of a bona fide controversy by the parties or their predecessors contemplating an agreed line;

there is no evidence or testimony in the record of the parties fixing a line, setting monuments on such a line, or in some other manner establishing a visible common boundary line; and there is no evidence or testimony in the record of acquiescence in the nature of compliance or acceptance, tacitly or passively, of an agreed line.

The trial judge found that "the errors in the descriptions in the conveyances make it impossible to reconcile the descriptions and determine the exact location of the intended grants except for one point." In effect, the trial judge found ambiguity to exist in the descriptions as to the location of the common boundary line between the parties. With this we agree. We cannot say in view of the evidence that plaintiff is entitled to the disputed area of land from the descriptive language of his deed (including the last clause thereof), and we cannot say that defendant is entitled to the disputed area of land from the descriptive language in his deed.

There must be a construction of the deeds as to intent—arrived at upon consideration of (1) the language of the descriptions as found in the deeds of the parties; (2) the nature of the descriptions (the description of defendants is general while that of plaintiffs is specific); (3) maps, surveys and similar documents (a sketch map of a survey made June 20, 1949, for plaintiffs' predecessor shows a common line between the lake lots of the parties), (4) the positions of the lake lot owners and the common grantor (the common grantor deeded defendants' lake lot 3 years before deeding plaintiffs' lake lot; actions of plaintiffs' predecessors following the June 20, 1949, survey; the fact that plaintiffs' original complaint of 1960 made no claim to the disputed area); and (5) other relevant and pertinent evidence of surrounding circumstances relating to and aiding a determination as to the intent

of the parties. See *Bice* v. *Holmes* (1944), 309 Mich 110; *Curran* v. *Maple Island Resort Association* (1944), 308 Mich 672; *Fulligar* v. *Stockdale* (1904), 138 Mich 363; *Hoffman* v. *City of Port Huron* (1894), 102 Mich 417; *Reidinger* v. *Cleveland Iron Mining Company* (1878), 39 Mich 30; *Willey* v. *Snyder* (1876), 34 Mich 60; *Howell* v. *Merrill* (1874), 30 Mich 282.

In deciding the issue of the common boundary line from the one common point on the east side of the property of the parties to the present shoreline of Bills lake, the trial judge followed *Cutliff* v. *Densmore, supra.*

6 Thompson on Real Property (1962 Replacement), § 3078, 1965 Supp, p 18, states:

"Various methods of division of lake beds have been used. If the lake is circular the shoreline is the base and the center line is the vertex of a triangle.[1] If the lake is oblong the lines are drawn perpendicular to a median center.[2] If neither of these methods are possible, the lake bed is divided in proportion to the shoreline owned.[3] The theory on all events is that the shore owners take ratably."[4] (Footnotes changed—only Michigan citations.)

The precise location of this common boundary line between the parties will be found only after there has been a survey of the bay or cove. The trial judge was not in error in refusing to draw a line to an unknown center point of the bay or cove. He did not have before him facts necessary to such a determination. Thus the method of division urged by plaintiff was not possible; and a proportional allocation of the new shoreline was proper in light of

---

[1] *Hilt* v. *Weber* (1930), 252 Mich 198 (71 ALR 1238).
[2] *A. M. Campau Realty Co.* v. *City of Detroit* (1910), 162 Mich 243.
[3] *Lincoln* v. *Davis* (1884), 53 Mich 375.
[4] *Grand Rapids Ice & Coal Company* v. *South Grand Rapids Ice & Coal Company* (1894), 102 Mich 227.

the applicable Michigan law. *Cutliff* v. *Densmore,
supra.*

Reversed and remanded for the purpose of determining a common boundary line between the parties in accordance with this opinion including taking additional proofs if necessary, and affirmed as to the trial court's determination allocating proportionally the disputed additional shorelands of the parties.

No costs, neither party prevailing in full.

QUINN, P. J., and FITZGERALD, J., concurred.