## STATE, *ex rel.* DIRECTOR OF DEPARTMENT OF CONSERVATION, *v.* SPENCER.

1. DEEDS—CONSTRUCTION.
   A deed of conveyance which is not ambiguous in its terms must be construed as written.

2. BOUNDARIES—GOVERNMENT LOTS—COMMON OWNER.
   Common owner of two government lots may convey any portion of such lots, without adherence to new boundary lines between them established by accretion after government survey.

3. DEEDS — DESCRIPTION — MEANDER LINE — COMMON OWNER — ACCRETION.
   Deed from common owner of government lot 1, section 36, T 15 N, R 19 W, and government lot 4, section 31, T 15 N, R 18 W, adjoining said lot 1, conveying lands described as "all that part of government lot 1 * * * in section 36, T 15 N, R 19 W," *held,* not to convey part of government lot 1 formed by process of accretion in section 31, T 15 N, R 18 W, even though such part would belong to separate owner of lot 1 as against separate owner of lot 4, under rules of accretion to meandered shore lines on inland lakes.

Appeal from Oceana; Van Domelen (Harold), J. Submitted Division 3 January 4, 1966, at Grand Rapids. (Docket No. 218.) Decided November 9, 1966.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur 2d, Deeds § 159.
[2] 12 Am Jur 2d, Boundaries § 12; 56 Am Jur, Waters §§ 476–481, 492.
[3] 56 Am Jur, Waters §§ 476, 477, 481, 490, 492.

Complaint by the State of Michigan on the relation of the Director of the Department of Conservation against John C. Spencer and June M. Spencer, and Robert G. Bowman, to determine title to land and for other relief. Judgment for defendants. Plaintiff appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Nicholas V. Olds* and *Warren R. Snyder*, Assistants Attorney General, for plaintiff.

*Stewart J. Roche* and *Henry L. Schram*, for defendants.

FITZGERALD, J.    Carrie Mears died testate on August 11, 1957, leaving an estate which included some 50 parcels of land.  Among these parcels were two in Calder township, Oceana county, Michigan:

(1) Government lot 4 of section 31, town 15 north, range 18 west and;

(2) Government lot 1 of section 36, town 15 north, range 19 west.

These parcels had remained in the Mears family since the patents were issued by the United States in 1856.

At the time of the issuance of the patents, both parcels had frontage on Silver Lake, the east side of government lot 1 being contiguous to the west side of government lot 4.  Since that time, the shore line of Silver Lake along the boundaries of lots 1 and 4 has been changed significantly by accretion. These changes become significant in light of the disposition made of these parcels by the executor of the estate.

Among the provisions in the will of Carrie Mears was the direction to her executor, "to convey to

the State of Michigan, department of conservation, some tract of land belonging to me in the township of Golden, in Oceana county, Michigan, not to exceed 75 acres and in value not to exceed $2,500, to be used as a public park, and I hereby authorize said executor to determine which of my said holdings therein shall be devoted to such purpose, after consulting the wishes of both the Golden township board and the officials of the department of conservation."

A real-estate broker was employed by the executor to assist in disposing of various parcels in the course of the administration of the estate. Negotiations between the executor, the real-estate broker and defendants Spencer resulted in the sale of government lot 4 to the Spencers on land contract in May of 1958. The Spencers and the executor thereafter caused lot 4 to be platted as Sandy View, the plat being dedicated by Spencers and the executor on November 20, 1958, and recorded November 9, 1959. Lot 4 was conveyed to the Spencers pursuant to the land contract on August 20, 1959.

Meanwhile, negotiations were under way to comply with the provision of Carrie Mears' will relative to the gift of land to the conservation department. The proceedings of the conservation commission dated August 8, 1958, include a memorandum to the director dated July 21, 1958, which recites that the executor and members of the department of conservation had "selected and agreed" on the tract of land owned by the estate of Carrie Mears "most desirable to the department." The memorandum continues with a recitation of the reasons why this tract was selected and a recommendation that acceptance of the gift be approved. Approval of this recommendation was forthcoming, and on January 15, 1959, the tract mentioned was conveyed by the

exceutor to the department of conservation as follows:

"The west 150 feet of that part of the southeast 1/4 of the northeast 1/4 lying north of an east-westerly county road, and the west 150 feet of that part of government lot 1 lying south of the center line of Silver Creek channel, all in section 36, town 15 north, range 19 west; also all that part of government lot 1 lying north of the center line of Silver Creek channnel, in section 36, town 15 north, range 19 west."

While these conveyances might represent the summation of all efforts in most land transactions, they represent only the beginning in this instance.

On April 22, 1963, defendants Spencer sold lot 57 in their Sandy View plat to defendant Robert Bowman on land contract. Bowman's efforts to clear this land were met on June 19, 1963, by the commencement of the instant action in the circuit court for Ingham county by plaintiff seeking injunctive relief and a determination of title to the parcel referred to as lot 57 of Sandy View. The injunction was denied and the case removed to the circuit court for Oceana county upon motion of defendants.

By way of recapitulation and to focus the issues that were tried in the circuit court, we paraphrase briefly from the opinion of the court filed at the conclusion thereof.

"The plaintiff brings this action to determine title to and to recover possession of the land included in lot 57 of Sandy View plat based upon its deed from the estate which includes the following described premises:

"All that part of government lot 1, lying north of the center line of Silver Creek channel, section 36, T 15 N, R 19 W.

"Plaintiff's claim is based upon the theory that the meander line of the original government survey

made in 1838 was at that time the shore line of
Silver Lake, and that at that time said government
lot 1 had frontage on Silver Lake but that most of
that frontage has been eliminated by accretion.  The
plaintiff further claims that as owner of government
lot 1 it is entitled to a proportionate share of lake
frontage by reason of said accretion which share
includes said lot 57.  The plaintiff further claims
that its deed is clear and unambiguous in the grant
of said government lot 1 and definitely includes the
land in question which is said lot 57.

"It is the claim of the defendants that the title to
all the land claimed by both parties in this suit was
in a common grantor for more than 100 years start-
ing from the United States patent, that the common
grantor had the legal right to convey any part of this
land including accretions according to the estab-
lished survey lines, that the executor conveyed the
land in question to Spencer and that if there was
any question as to the intent of the grant, such intent
or ambiguity may be explained by parol evidence.

"Neither party has challenged the boundary lines
to the property in question nor accuracy of the plat
of Sandy View.  Therefore, it would appear that
the determination of the intent of the grantor in
these conveyances would be the sole issue to be
resolved in this case."

The opinion of the trial court narrows the con-
troversy to two issues: first, whether the instru-
ments of conveyance to the State and to Spencer
are clear and unambiguous as to the description of
the land involved; and second, determination of the
intent of the parties involved in these transactions
as derived from the surrounding circumstances.  The
court determined that the deeds clearly delineated
the property conveyed, and that this clarity was
buttressed by examination of the intent of the par-
ties as evidenced by the testimony presented at the
trial.  In short, the land in question passed under

the deed to Spencer and was not included in the deed to the State, and this result was exactly what was intended by the grantor, by Spencer, by various other individuals involved in some aspect of the negotiations prior to the deed, and, it would seem to be suggested in the opinion, by the conservation department of the State of Michigan.

In appealing from the trial court's decision, the State of Michigan asserts that the description was clear and unambiguous, and that as such, parol evidence is inadmissible to alter its terms. In the State's view, however, the unambiguous description clearly includes that which the trial court found to be clearly excluded. It is at this point that we return to the changes in the shore line of Silver Lake and its relationship to the resolution of this controversy.

The land here in question, previously referred to as lot 57 of Sandy View, lay under the waters of Silver Lake when Charles Mears took title from the government in 1856. At that time, the eastern boundary of government lot 1 was the east line of range 19 west up to the point where it intersected Silver Lake, and the shore line of Silver Lake served as the boundary from the point of intersection. Due to accretion, however, no portion of the shore line of Silver Lake falls in range 19 west in the area of government lot 1.

As stated in *Cutliff* v. *Densmore* (1958), 354 Mich 586, 590:

"In Michigan the law is clear that where property abuts a shore line, that shore line * * * is the boundary of the property notwithstanding its subsequent advancement or recession."

Had government lot 1 (now owned by the State) and government lot 4 (now owned by Spencer) been held by other than a common grantor during the

period of accretion, the land in question would have been part of government lot 1. But where both lots were owned by a common grantor, he may convey any portion of the lands in his possession without adherence to new lines established by accretion, if this be his desire.

The question then is to whom the executor of the Mears' estate conveyed the land in question. The relevant portion of the deed given to the State describes the property as "all that part of government lot 1 lying north of the center line of Silver Creek channel, in section 36, town 15 north, *range 19 west.*" The land in question, while lying north of the center line of Silver Creek channel, is in section 31, town 15 north, *range 18 west.* The trial court found that the description clearly fails to include the land in question.

In the process of unravelling the tangled skein, we can do no better than quote from the trial court's opinion. Using *Gawrylak* v. *Cowie* (1957), 350 Mich 679, as a springboard and as authority for the proposition that a deed of conveyance, if not ambiguous in its terms, must be construed as written, the court sums up the situation as follows:

"The executor conveyed to Spencer by land contract on May 9, 1958, and by deed pursuant to said land contract on August 20, 1959, government lot 4, section 31, T 15 N, R 18 W. The west boundary of said government lot 4 and the west boundary of Sandy View plat are also the north-south boundary line between sections 31 and 36 and also the north-south boundary line between town 15 north, range 18 west and town 15 north, range 19 west. At the time that the executor contracted to sell government lot 4 to Spencer the estate was owner of both government lot 4 and government lot 1, so said grantor had the right to sell all or any portion of government lot 4 to Spencer. The executor on May 9, 1958, con-

tracted to sell government lot 4 to Spencer and on August 20, 1959, deeded the same to Spencer. All of government lot 4 as claimed by Spencer, including said lot 57, lies in section 31, T 15 N, R 18 W as described in his contract and deed. The description in the contract and the deed, in the opinion of this court, is unambiguous and clearly expresses an intent on the part of the grantor to convey all of government lot 4, including said lot 57, lying in section 31, T 15 N, R 18 W, to Spencer. The fact that Silver Creek separates lot 57 from the rest of government lot 4 cannot detract from a lawful grant of title to said lot 57. This court is unaware of any rule of law that states that a boundary line cannot cross a stream.

"After negotiations with the conservation department and the Golden township board, the executor, pursuant to the legacy set out in paragraph 'C' of said will conveyed to the State of Michigan government lot 1 by deed dated January 15, 1959. In the opinion of this court the description set out in this deed is unambiguous and clearly expresses an intent on the part of the grantor to convey all of that part of government lot 1 lying north of the center line of Silver Creek channel in section 36, T 15 N, R 19 W, as said lot 1 existed at the time of the deed and nothing more. In order to convey any part of lot 57 to the plaintiff, it would have been necessary for the grantor to include in the description a reference to government lot 4, a reference to section 31, and a reference to range 18 west. No such reference was made. For this court to read into a description an additional lot number, an additional section number, and a different range would be imagination and not construction.

"Both of these deeds clearly delineate the property conveyed. From these descriptions alone this Court is of the opinion that plaintiff is not entitled to any part of government lot 4 as claimed. In addition to the instruments of conveyance above discussed, there is another recorded instrument in writing affecting

title to this land which was admitted in evidence in this case as plaintiff's exhibit 6, the plat of Sandy View. On November 20, 1958, the executor signed the dedication to Sandy View plat which was duly witnessed and acknowledged before a notary public which plat contained the land in question designated thereon as Lot 57. The dedication on the plat states that Spencer and the executor 'have caused the land embraced in the annexed plat to be surveyed laid out and platted to be known as Sandy View.' This plat, which requires all the formalities of a deed, when considered alone or in conjunction with the land contract and deed to Spencer, confirms the intention of the grantor to convey to Spencer the land contained in lot 57. It is inconceivable that on November 20, 1958, that the executor would join in a dedication of this land in a plat with Spencer and then less than two months later deed the same land to the plaintiff."

Concluding, the court states that based upon the testimony taken, "it is the opinion of the court that the executor intended to grant and did grant, by valid instruments of conveyance to Spencer, the land included in said lot 57."

This Court believes that the trial court reached the proper conclusion midway in its opinion and that the taking of testimony whether it be admissible or inadmissible was surplusage.

The *Gawrylak* rule, *supra,* as applied to the facts of this case leads only to the conclusion that the trial court reached the proper result.

Affirmed. Costs to appellees.

HOLBROOK, J., concurred.

The late Judge WATTS, presiding member of the panel of judges to whom this case was submitted for determination, took no part in the preparation of this opinion.